**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*: | **FOR PUBLICATION** |
| ERICA ITZHAK, | Chapter 11 (Subchapter V) |
| Debtor. | Case No. 24-10669 (JPM) |
| YOSSEF KAHLON, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 25-01042 (JPM) |
| ERICA ITZHAK, | |
| Defendant. | |

*APPEARANCES*

**BFSNG LAW GROUP, LLP**
*Counsel for the Creditor-Plaintiff*
6851 Jericho Turnpike, Suite 250
Syosset, NY 11791
By: Heath S. Berger

**TARTER KRINSKY & DROGIN LLP**
*Counsel for the Debtor-Defendant*
1350 Broadway, 11th Floor
New York, NY 10018
By: Scott S. Markowitz

**GERON LEGAL ADVISORS LLC**
*Subchapter V Trustee*
370 Lexington Avenue, Suite 1208
New York, NY 10017
By: Yann Geron

**MEMORANDUM OPINION AND ORDER GRANTING THE DEBTOR-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE CREDITOR-PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

I. **INTRODUCTION**

This adversary proceeding (the "**Adversary Proceeding**") arises from the Chapter 11 case *In re Erica Itzhak*, Case No. 24-10669 (JPM) (Bankr. S.D.N.Y. filed Apr. 19, 2024). On March 17, 2025, judgment creditor Yossef Kahlon (the "**Plaintiff**") filed a complaint against debtor Erica Itzhak (the "**Defendant**"), seeking a determination that the Plaintiff's claim arising from a judgment issued by a New York state court in a legal malpractice proceeding against the Defendant is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) (the "**Adversary Complaint**"). (Dkt. No. 1).

Before the Court are two motions: (1) the Defendant's motion for summary judgment, dated April 24, 2026, seeking denial of the Plaintiff's request for relief under § 523(a) and a determination that the Plaintiff's judgment claim is dischargeable (the "**Motion**") (Dkt. No. 12); and (2) the Plaintiff's cross-motion for summary judgment, also dated April 24, 2026, requesting judgment in his favor on his § 523(a) claims (the "**Cross-Motion**" and, together with the Motion, the "**Motions**"). (Dkt. No. 13).

The Court held a hearing to consider the Motions on June 10, 2026 (the "**Hearing**"). (Dkt. No. 18). Having considered the parties' submissions, the arguments presented at the Hearing, and the record as a whole, the Court finds that the Defendant is entitled to summary judgment determining that the Plaintiff's claim is dischargeable as a matter of law, and that the Plaintiff has failed to establish a basis for nondischargeability under §§ 523(a)(2)(A), 523(a)(4), or 523(a)(6). Thus, for the reasons set forth below, the Motion is **GRANTED**, and the Cross-Motion is **DENIED**.

2

II.      **BACKGROUND**

    **A. Factual Background**

This matter arises from a malpractice action involving legal services that the Defendant provided to the Plaintiff in connection with a failed real estate transaction and the litigation that followed. The Defendant is an attorney admitted to practice in the State of New York. (Dkt. No. 1, ¶ 7). The Plaintiff owns Atlas Solar Holdings, LLC ("**Atlas**"), a Delaware limited liability company with its principal place of business in New York. (Dkt. No. 13; *see also* Statement of Undisputed Facts, Dkt. No. 16).

In 2011, Sunray Solar Inc. ("**Sunray**"), Max Diversified Inc. ("**Max**"), and Troy Lambe ("**Lambe**," and tougher with Sunray and Max, the "**Sunray Parties**") entered into a deal with the Plaintiff and Atlas involving an investment in certain real property and solar energy systems in New Jersey. (Dkt. No. 16, ¶ 11-12). When the deal fell apart in June 2012, the Plaintiff retained the Defendant and her law firm, the Law Offices of Erica T. Yitzhak, to pursue breach-of-contract claims against the Sunray Parties. (*Id*. ¶ 56).

On October 22, 2012, the Defendant commenced an action on behalf of the Plaintiff and Atlas against the Sunray Parties in the New York State Supreme Court, New York County (the "**Initial State Action**"). *See Kahlon v. Lambe*, Index No. 157465/2012 (N.Y. Sup. Ct. N.Y. Cnty., filed Oct. 2012). According to the Plaintiff, the Defendant filed an unverified complaint containing numerous factual inaccuracies, caused unauthorized UCC liens to be filed against the Sunray Parties, submitted untimely pleadings, and failed to allege an adequate basis for jurisdiction. (Dkt. No. 16, ¶¶ 68-83). The Defendant also allegedly failed to effectuate proper service on the Sunray Parties and prepared – but did not file – a verified amended complaint for which she nevertheless

3

charged the Plaintiff. (*Id*. ¶ 77). As a result of those deficiencies, the Initial State Action was ultimately dismissed for lack of jurisdiction without leave to amend. (*Id*. ¶ 87).

On May 24, 2013, the Sunray Parties commenced an action against the Plaintiff, Atlas, the Defendant, and the Defendant's law firm in the United States District Court for the Eastern District of New York (the "**District Court**"), asserting claims for breach of contract, tortious interference, defamation, abuse of process, and unauthorized filing of UCC liens (the "**Federal Action**"). *See Lambe et al. v. Kahlon et al.*, Case No. 13-CV-03126 (E.D.N.Y. filed May 24, 2013). On July 18, 2013, the Plaintiff and the Defendant asserted counterclaims against the Sunray Parties for breach of contract, negligent misrepresentation, and fraud. (Dkt. No. 16, ¶¶ 91-92).

The Federal Action proceeded to a jury trial on January 20, 2016. (*Id*.). During the trial, on January 29, 2016, the Sunray Parties settled their claims against the Defendant and her law firm, but not their claims against the Plaintiff and Atlas. (*Id*. ¶ 102). On February 1, 2016, the jury rendered a verdict against the Plaintiff, finding him and his company liable for tortious interference, defamation, abuse of process, and wrongful filing of UCC liens, but not liable for breach of contract. (*Id*. ¶ 103). The jury awarded the Sunray Parties $750,000 in compensatory damages and $250,000 in punitive damages. (*Id*.).

Following the verdict in the Federal Action, the Plaintiff commenced an action for legal malpractice against the Defendant and her law firm in March 2016 in the New York State Supreme Court, Nassau County (the "**State Court**"). *See Yossef Kahlon et al. v. Erica T. Yitzhak, et al.*, Index No. 601659/2016 (N.Y. Sup. Ct. Nassau Cnty., filed Mar. 2016) (the "**State Court Proceeding**").

On September 1, 2021, the State Court granted summary judgment in favor of the Plaintiff on his malpractice claim and dismissed each of the Defendant's affirmative defenses. (Dkt. No.

4

16, Ex. B).  Relying in part on the statements made by the District Court in the Federal Action (*see infra* n.1), the State Court concluded that the Defendant's representation of the Plaintiff in the Initial State Action fell below the standard of "care, skill, and diligence commonly possessed and exercised by a member of the legal profession."  (*Id*.).  The State Court identified, among other deficiencies: "[n]ot following up on matters and checking on the status of cases," "[p]roducing sloppy work product, including careless spelling errors and poorly drafted documents," "[n]eglecting to timely file documents," "[e]ncouraging Atlas to file UCC-1 statements in violation of state law," "[t]elling Atlas that it was acceptable to hold off on notifying a debtor that UCC-1 statements had been filed against his properties," "[t]elling Atlas that it was acceptable to threaten criminal prosecution solely to obtain an advantage in a civil matter," "[f]ailing to include essential facts as to the jurisdictional basis for Atlas' Supreme Court case against Sunray Parties," and "[f]ailing to provide Atlas with a written letter of engagement."  (*Id*.).

On April 28, 2022, the State Court entered judgment against the Defendant in the principal amount of $1 million, plus accrued interest of $503,013.70, calculated at 9% per annum (the "**State Court Judgment**").  (*See* Statement of Undisputed Facts, Dkt. No. 16, ¶ 8).  The total amount of the State Court Judgment was $1,503,013.70.  (*Id*.).  On February 15, 2024, the Plaintiff delivered an "Execution With Notice to Garnishee" to the county sheriff pursuant to the State Court Judgment.  (*Id*.).  Subsequently, on March 21, 2024, the Defendant filed a motion to reconsider the State Court Judgment, which the State Court denied.  (*Id*. ¶¶ 9, 96).

On April 19, 2024, the Defendant filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this District.  (Dkt. No. 1).  By order dated June 28, 2024, the Defendant's Chapter 13 case was converted to a case under Chapter 11, Subchapter V.  (Dkt. No. 36).  The claims register lists the Plaintiff as asserting a claim against the Defendant in the amount of

5

$1,853,773.23, of which $700,000 is classified as secured by the Defendant's interest in co-op shares. (*See* Proof of Claim No. 17-1).

### B. Procedural Posture

On March 17, 2025, the Plaintiff filed the Adversary Complaint, arguing that his claim against the Defendant is nondischargeable in its entirety under § 523(a). (Dkt. No. 1). The Plaintiff articulates three grounds for nondischargeability. First, the Plaintiff argues that his judgment claim cannot be discharged under § 523(a)(2)(A) because it is a debt traceable to legal fees that the Defendant allegedly obtained "through false pretenses, false representations, and actual fraud." (*Id*. ¶¶ 23-24). The Plaintiff contends that § 523(a)(2)(A) applies based on his allegations that the Defendant made "material misrepresentations regarding the legal advice provided to [the] Plaintiff," knew that "such representations were false when made," made "such representations with the intent to deceive [the] Plaintiff," and that the "Plaintiff justifiably relied on such representations to his detriment." (*Id*. ¶ 24). Second, the Plaintiff argues that § 523(a)(4) applies because the attorney-client relationship constituted a fiduciary relationship and, as such, the judgment claim constitutes debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, and larceny." (*Id*. ¶¶ 28-31). Third, the Plaintiff asserts that the judgment claim is nondischargeable under § 523(a)(6) because it arises from the Defendant's "willful and malicious injury" of the Plaintiff through "intentional concealment of material information" and "conscious disregard of her duties as an attorney." (*Id*. ¶¶. 34-35).

On April 24, 2026, the Defendant moved for summary judgment. (Dkt. No. 12). The Defendant argues that each of the Plaintiff's § 523(a) claims fails as a matter of law because the State Court Proceeding concerned only whether the Defendant was liable for negligent malpractice, and the State Court did not make any factual finding as to fraud, fraudulent

6

misrepresentation, defalcation, embezzlement, larceny, or willful or malicious injury. (*Id.*). The Defendant argues that the Plaintiff's § 523(a)(2)(A) claim fails because the State Court's factual finding as to "negligent malpractice is insufficient to establish the requisite [fraudulent] intent under § 523(a)(2)(A)." (*Id.*) (citing *In re Parker*, 264 B.R. 685, 699-700 (B.A.P. 10th Cir. 2001). The Defendant argues that the same logic applies to the Plaintiff's § 523(a)(4) claim because Plaintiff relies solely on the State Court Judgment, and "negligent malpractice is insufficient to establish defalcation under § 523(a)(4)." (*Id.*) (citing *In re Jahrling*, 816 F.3d 921, 926 (7th Cir. 2016)). Finally, with respect to the § 523(a)(6) claim, the Defendant argues that the Plaintiff has failed to establish willful and malicious injury because the State Court did not make any factual finding as to the existence of subjective intent on the part of the Defendant. (*Id.*). Based on those arguments, the Defendant contends that there is no genuine issue of triable fact as to the Plaintiff's § 523(a) claims, and that the Defendant is entitled to judgment as a matter of law.

Also on April 24, 2026, the Plaintiff filed the Cross-Motion. (Dkt. No. 13). The Plaintiff asserts that the State Court has already found the Defendant liable for negligent malpractice in the State Court Proceeding, and that the doctrine of collateral estoppel prevents the Defendant from relitigating issues already decided in another forum. (*Id.* ¶¶ 25-38). Even if collateral estoppel is inapplicable, the Plaintiff argues, the Court should find the Plaintiff's claim nondischargeable under § 523(a) because the claim arises from a judgment based on the Defendant's alleged fraudulent conduct while representing the Plaintiff in a fiduciary capacity. (*Id.* ¶¶ 51-56).

On May 12, 2026, the Plaintiff filed a response opposing the Defendant's Motion (the "**Response**"). (Dkt. No. 14). In the Response, the Plaintiff argues that the Defendant "attempts to recast the State Court's findings as merely 'ordinary negligence' while ignoring the actual record developed in the underlying litigation." (*Id.* ¶ 2). The Plaintiff argues that, based on extensive

7

evidence that the Defendant "knowingly fil[ed] defective pleadings" and "record[ed] and transmit[ted] improper UCC liens," the State Court found that "the Defendant committed legal malpractice," "dismissed all of [the] Defendant's affirmative defenses," and "denied [the] Defendant's motions to vacate [the State Court Judgment]." (*Id*. ¶ 3).  According to the Plaintiff, those findings "necessarily establish conduct involving intentional wrongdoing, conscious disregard of duties owed to [the] Plaintiff, and deliberate acts substantially certain to cause injury, thereby satisfying the elements of nondischargeability" under § 523(a).  (*Id*.).

Also on May 12, 2026, the Defendant filed an opposition to the Plaintiff's Cross-Motion (the "**Opposition**").  (Dkt. No. 17).  The Defendant argues that the State Court made findings only as to negligent legal malpractice, and that courts have consistently held that "a negligent legal malpractice judgment, standing alone," is "insufficient to establish a nondischargeability claim under § 523(a)."  (*Id*.).  With respect to the Plaintiff's argument concerning collateral estoppel, the Defendant contends that the doctrine does not apply here because the State Court Proceeding involved issues fundamentally different from those raised in the Adversary Proceeding.  According to the Defendant, "failing to exercise ordinary skill and knowledge is a far cry from the exacting standard of fraudulent, or knowing intent required to sustain a nondischargeability claim."  (*Id*.).

On May 20, 2026, the Defendant filed a reply to the Plaintiff's Response (the "**Reply**").  (Dkt. No. 19).  The Reply largely reiterates the Defendant's arguments in the Motion and the Opposition: that collateral estoppel does not apply; that the State Court did not make any factual finding as to the fraud, fraudulent intent, willful or malicious injury, or any other elements of nondischargeability under § 523(a); and that courts have routinely held that negligent malpractice judgments are insufficient to establish a claim under § 523(a).  (*Id*.)

III.   **LEGAL STANDARD**

A. **Summary Judgment**

Federal Rule of Civil Procedure 56, made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7056, governs motions for summary judgment. *See* Fed. R. Civ. P. 56; *see also* Fed. R. Bankr. P. 7056. Under Rule 56(a), a court shall grant summary judgment if the movant establishes that there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 322 (2025); *see also Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, 603 B.R. 682, 687 (Bankr. S.D.N.Y. 2019).

A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears "the initial burden of demonstrating the absence of a genuine dispute of material fact." *Brown v. Metro. Dental Assocs.*, No. 21-CV-851-CM, 2023 WL 5154415, at *4 (S.D.N.Y. Aug. 10, 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may satisfy that burden by "submitting evidence that negates an essential element of the nonmoving party's claim" or by "demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

"Once the movant has carried its initial burden," the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *In re Christenson*, 667 B.R. 770, 783 (Bankr. S.D.N.Y. 2025). "The nonmoving party 'may not rely on conclusory allegations or

9

unsubstantiated speculation.'" *Ortiz v. Wal-Mart Stores E., LP*, No. 17-CV-945-NSR, 2019 WL 1171566, at \*2 (S.D.N.Y. Mar. 13, 2019) (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)). "Moreover, if the evidence for the nonmoving party is 'a mere scintilla' or 'not significantly probative,' the court may grant summary judgment." *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173, 187 (S.D.N.Y. 2014) (quoting *Anderson*, 477 U.S. at 249-50). "In deciding whether a genuine dispute exists, a court must 'construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 260 (S.D.N.Y. 2011) (quoting *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003)).

"The same standard applies where, as here, the parties file cross-motions for summary judgment." *Cooke-Harris v. Delgado*, No. 05-CV-2081-RMB, 2007 WL 3256122, at \*2 (S.D.N.Y. Oct. 30, 2007). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## B. Collateral Estoppel

"Issue preclusion, also known as collateral estoppel, may be applied in actions to determine the dischargeability of a debt." *In re Townsend*, 550 B.R. 220, 225 (Bankr. E.D.N.Y. 2016); *see also In re Shiver*, 396 B.R. 110, 119 (Bankr. S.D.N.Y. 2008). When the prior judgment was entered by a state court, federal courts must give that judgment "the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 647 (S.D.N.Y. 2011) (citing *Cloverleaf Realty of New York, Inc. v. Town of Wawayanda*, 572 F.3d 93, 95 (2d Cir. 2009)). Because the

10

State Court Judgment was entered in New York, New York law governs its preclusive effect. *See*

*VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025) (applying New York law to

determine the preclusive effect of a judgment issued by the New York Supreme Court in a federal

action).

Under New York law, collateral estoppel bars a party from relitigating an issue when: "(1)

the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually

litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding,

and (4) the issue previously litigated was necessary to support a valid and final judgment on the

merits." *Deutsche Bank Nat'l Tr. Co. v. Murray*, 176 A.D.3d 1172, 1175 (N.Y. App. Div. 2d Dep't

2019); *see also Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly &*

*Co.*, 65 N.Y.2d 449, 455-56 (N.Y. 1985)). An issue is "actually litigated" when it is "properly

raised by the pleadings or otherwise placed in issue and actually determined in the prior

proceeding." *Kristensen v. Charleston Square, Inc.*, 295 A.D.2d 404, 405 (N.Y. App. Div. 2d Dep't

2002). Findings that are incidental, immaterial, or unnecessary to the judgment – even when "put

in issue by the pleadings" – are not entitled to preclusive effect. *See 2018 Seventh Ave. v. Nach*

*Haus Leasing Corp.*, 289 N.Y. 490, 496 (N.Y. 1943).

"The party seeking the benefit of collateral estoppel bears the burden of proving that the

identical issue was necessarily decided in the prior proceeding, and is decisive of the present

action." *Sherwyn Toppin Mktg. Consultants, Inc. v. New York State Liquor Auth.*, 103 A.D.3d 648,

650 (N.Y. App. Div. 2d Dep't 2013) (citing *City of New York v. College Point Sports Ass'n, Inc.*,

61 A.D.3d 33, 42 (N.Y. App. Div. 2d Dep't 2009)). "Once that burden is met, the party opposing

the application of collateral estoppel 'bears the burden of demonstrating the absence of a full and

11

fair opportunity to contest the prior determination.'" *Sherwyn Toppin*, 103 A.D.3d at 650 (quoting *College Point Sports*, 61 A.D.3d at 42).

"While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *Shiver*, 396 B.R. at 124 (citing *In re St. Laurent*, 991 F.2d 672, 675-76 (11th Cir. 1993)). Thus, where a party seeks to give preclusive effect to a state court judgment in a bankruptcy proceeding to determine dischargeability under § 523(a), the findings underlying that judgment must establish the elements of the particular exception invoked under § 523(a). *See In re Pulver*, 327 B.R. 125, 132 (Bankr. W.D.N.Y. 2005) (citing *Grogan v. Garner*, 498 U.S. 279, 284-85 n. 11 (1991)).

## C. Dischargeability Under § 523(a)

"Section 523(a) of the Bankruptcy Code enumerates twenty categories of debts that are excepted from an individual debtor's bankruptcy discharge." *In re Campbell*, 676 B.R. 464, 478 (Bankr. S.D.N.Y. 2026) (citing 11 U.S.C. § 523(a)(1)-(20)). Because bankruptcy aims to provide a "fresh start to the honest but unfortunate debtor, courts have long recognized that exceptions to discharge … must be narrowly construed against the creditor." *In re Golden*, 671 B.R. 544, 591 (Bankr. E.D.N.Y. 2025); *see also In re Deutsch*, 575 B.R. 50, 58 (Bankr. S.D.N.Y. 2017) (holding that "exceptions to discharge must be construed narrowly against the creditor in favor of the debtor"). Thus, "the party claiming nondischargeability bears the burden of establishing each element" by a preponderance of the evidence. *In re Salman*, No. 14-22017 (RDD), 2016 WL 11728990, at *4 (Bankr. S.D.N.Y. Nov. 7, 2016) (citing *Grogan v. Garner*, 498 U.S. 279, 288

(1991)); *see also Campbell*, 676 B.R. at 478 (noting that "the creditor bears the burden of proving by a preponderance of the evidence that the debt is nondischargeable").

## IV.   LEGAL ANALYSIS

The Motions present a narrow question: whether a state court judgment for negligent malpractice – without findings of fraud, defalcation, embezzlement, larceny, or willful and malicious injury – may nevertheless establish nondischargeability under § 523(a) where the facts underlying the malpractice claim may also be probative of intentional misconduct. The Court finds that the State Court Judgment establishes only the existence and amount of the Defendant's liability for legal malpractice; it does not establish the additional elements necessary to except that debt from discharge. Thus, for the reasons explained below, the Plaintiff has failed to raise a genuine dispute of material fact as to any basis for nondischargeability under § 523(a), and the Defendant is entitled to judgment as a matter of law.

### A. Collateral Estoppel Does Not Apply

The initial question presented by the Motions is whether the State Court Judgment bars the parties from litigating the issue of dischargeability under the doctrine of collateral estoppel. Based on the record, the Court finds that collateral estoppel does not apply here.

The issues decided in the State Court Proceeding are not identical to those presented in this Adversary Proceeding. Under New York law, a legal malpractice claim requires proof that "the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages." *Zeppieri v. Vinson*, 140 N.Y.S.3d 311, 313 (N.Y. App. Div. 2d Dep't 2021); *see also Rohe v. Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn, LLP*, 160 F. Supp. 3d 542, 548 (S.D.N.Y. 2016). Fraudulent intent is not an element of

13

legal malpractice. *See Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010) (noting that a plaintiff's "non-fraud claims for negligence do not require proof of scienter"); *see also Kalnit v. Eichler*, 85 F. Supp. 2d 232, 245 (S.D.N.Y. 1999) ("Negligent conduct is insufficient to raise an inference of fraudulent intent.").

Here, the State Court found only that the Defendant committed negligent malpractice. (*See* Statement of Undisputed Facts, Dkt. No. 16). The State Court did not find that the Defendant knowingly made a false representation with the intent to deceive the Plaintiff or that she committed fraud or defalcation with the culpable state of mind required by § 523(a). (*Id.*; *see also* Dkt. No. 12). Whether the Defendant's conduct rose to the level of intentional misconduct or constructive fraud was therefore neither decided by nor necessary to the State Court Judgment.

To the extent the Plaintiff contends that collateral estoppel applies because the State Court's negligent malpractice ruling arises from the same nucleus of operative fact as the Adversary Proceeding, the Court is unpersuaded. Collateral estoppel requires the issues to be identical, not merely that there is factual overlap between the two proceedings. *See Batyreva v. New York City Dep't of Educ.*, No. 07-CV-4544-PAC-DF, 2010 WL 11712911, at *13 (S.D.N.Y. Aug. 23, 2010) ("Collateral estoppel applies only where the issues in both proceedings are identical."). A negligent malpractice claim is not equivalent to a fraud claim. Although the same course of conduct may support claims sounding in both malpractice and fraud, the two claims require proof of materially different elements. *See OneWest Bank, FSB v. Joam LLC*, No. 10-CV-1063-JG-SMG, 2012 WL 195013, at *5 (E.D.N.Y. Jan. 23, 2012) (noting that a "fraud claim is distinct from an ordinary legal malpractice claim," despite "[f]actual overlap between the allegations supporting the two claims"). A fraud claim asserted alongside a legal malpractice claim is "sustainable only to the extent that it is premised upon one or more affirmative, intentional misrepresentations – that

14

is, something more egregious than mere 'concealment or failure to disclose [one's] own malpractice.'" *Kaiser v. Van Houten*, 12 A.D.3d 1012, 1014 (N.Y. App. Div. 2d Dep't 2004) (citing *White of Lake George Inc. v. Bell*, 251 A.D.2d 777, 778 (N.Y. App. Div. 3d Dep't 1998)).

Even if the Plaintiff's malpractice allegations were probative of fraud, those allegations are insufficient to warrant collateral estoppel because fraud was not "actually litigated" in the State Court Proceeding. *See Murray*, 176 A.D.3d at 1175; *see also Evans*, 469 F.3d at 281. The Plaintiff argues that the factual allegations raised in the State Court Proceeding – including allegations that the Defendant knowingly filed defective pleadings and recorded or transmitted improper UCC liens – necessarily establish intentional wrongdoing. (Dkt. No. 14). But collateral estoppel applies to issues actually determined, not to every factual allegation placed before the prior court. *See In re Hall*, 629 B.R. 124, 151 (Bankr. E.D.N.Y. 2021) (holding that, while "a full trial on the merits is not a prerequisite for collateral estoppel to apply," the issue must be "raised by the pleadings or otherwise placed in issue" and decided by the prior court); *see also Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 424-25 (S.D.N.Y. 2008) ("To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint."). The Plaintiff has not identified any finding by the State Court that characterized those allegations as intentional or fraudulent conduct. The State Court's dismissal of the Defendant's affirmative defenses and denial of her subsequent efforts to vacate the State Court Judgment do not constitute a finding of fraud on the merits. *See Isaac v. City of New York*, No. 16-CV-4729-KAM-RLM, 2020 WL 1694300, at *7 (E.D.N.Y. Apr. 6, 2020) (noting that a dismissal of claims "result[ing] from legal insufficiencies" does not constitute a decision on the merits). Those rulings establish neither fraudulent intent nor any other element necessary to except the debt from discharge under § 523(a).

While the State Court Judgment establishes the existence and amount of the Plaintiff's claim, it does not establish that the claim is nondischargeable. The Plaintiff must therefore prove each element of the exceptions invoked under § 523(a). Because the Plaintiff cannot rely on collateral estoppel to satisfy that burden, the Court turns to the merits of each claim.

## B. The Debt Is Dischargeable Under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal or refinancing of credit" to the extent obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). "False pretenses, false representation, and actual fraud are three independent causes of action – each requiring proof of the different elements." *In re Scialdone*, 533 B.R. 53, 58 (Bankr. S.D.N.Y. 2015). On summary judgment, a creditor may prevail by establishing any one of those grounds and demonstrating that no genuine dispute of material fact exists as to the required elements. *See Ames*, 605 U.S. at 322; *see also Madoff Investment Securities*, 603 B.R. 682, 687 (Bankr. S.D.N.Y. 2019). The creditor must establish those elements by a preponderance of the evidence. *See Campbell*, 676 B.R. at 478.

To establish nondischargeability based on false representation, the creditor must show that: (1) the debtor "made a false representation"; (2) "at the time the representation was made, the debtor knew it was false"; (3) "the debtor made the representation with intent to deceive the creditor"; (4) "the creditor justifiably relied on the representation"; and (5) "the creditor sustained loss or damage as a proximate consequence of the false representation." *In re Gumbs*, 663 B.R. 227, 237 (Bankr. S.D.N.Y. 2024) (citing *Lupe Development Partners, LLC v. Deutsch (In re Deutsch)*, 575 B.R. 50, 58-59 (Bankr. S.D.N.Y. 2017)). "[I]ntent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor[.]" *In re Paredes*, No. 16-10320-MG, 2017 WL 2603687, at *5 (Bankr. S.D.N.Y. June 15, 2017) (citing

16

*Hong Kong Deposit and Guar. Co. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y. 1990)). Failure to prove any of the elements is "fatal to a creditor's case." *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 422 (Bankr. S.D.N.Y. 1991)).

False pretenses, by contrast, require a showing of "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." *Gumbs*, 663 B.R. at 237 (citing *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000)). False pretenses are distinct from false representations and may arise from conduct or implied representations that create a false impression. *See In re Zhu*, No. 19-11870-JLG, 2022 WL 3364579, at *18 (Bankr. S.D.N.Y. Aug. 12, 2022) ("'False pretenses' differ from 'false representations' because they involve conduct, not express oral or written misrepresentations."); *see also In re Chase*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007) (explaining that "a false pretense is designed to convey an impression without an oral representation," while a "false representation" involves an express misrepresentation, oral or written). To establish nondischargeability based on false pretenses, a creditor must show that the debtor's conduct "create[ed] a contrived and misleading understanding of the transaction on part of the plaintiff, which wrongfully induced the plaintiff to advance money, property, or credit to the defendant." *In re Lee*, No. 22-70367-REG, 2024 WL 1261790, at *6 (Bankr. E.D.N.Y. Mar. 25, 2024) (citing *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)).

Actual fraud requires a showing that "a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right." *Scialdone*, 533 B.R. at 59 (citing *DRCK, LLC v. Chong (In re Chong)*, 523 B.R. 236, 243 (Bankr. D. Colo. 2014)). "The term 'actual fraud' encompasses 'any deceit, artifice, trick, or design involving direct or indirect operation of the mind, used to circumvent or cheat another.'" *Gumbs*, 663 B.R. at 237 (quoting *Reddy v. Melnik*

17

*(In re Melnik)*, 592 B.R. 9, 21 (Bankr. N.D.N.Y. 2018)).  In other words, "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Gumbs*, 663 B.R. at 237 (quoting *Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. 355, 360 (2016)).

Here, the Plaintiff has not established any of those grounds.  The record does not identify a specific false representation that the Defendant knowingly made to the Plaintiff with the intent to deceive him.  The Adversary Complaint alleges generally that the Defendant made material misrepresentations concerning the legal advice she provided.  (Dkt. No. 1).  Although the Plaintiff's Cross-Motion attaches the complete hearing transcripts, depositions, and pleadings from the State Court Proceeding – totaling 2,147 pages – as purported evidence of fraud, none of those documents establishes that the State Court made a factual finding of fraud.[1]  (Dkt. No. 13, Ex. A-M).  While scattered references to fraudulent conduct and intent appear throughout those documents, the Plaintiff's fraud allegations were neither placed into a distinct, properly pleaded fraud claim nor necessary to the State Court's determination of negligent malpractice.  (*Id*.).  The State Court's finding that the Defendant failed to exercise the ordinary skill and care required of

---

[1]    The materials submitted by the Plaintiff from the State Court Proceeding – and relied upon by the Plaintiff in an effort to demonstrate the Defendant's alleged fraudulent intent – also contain records from the Federal Action.  On the last day of the federal trial, Judge Wexler stated, regarding the Defendant's prior conduct:

> "I must tell you I was thinking of submitting this case with respect to your actions to the grievance committee.  I believe you violated everything that a lawyer should have done in a case.  Either you accepted what your client said and did what he said which you shouldn't have, or you did it only your own.  Either one.  You violated all the ethics as a lawyer.  I'm putting this on the record.  From hereon in, that a federal judge found your conduct disgusting[.]"

*Lambe*, Trial Tr. at 965-66.  (Dkt. No. 13, at 2005).  Although the District Court strongly criticized the Defendant's professional conduct, it did not determine that she acted with fraudulent intent.  The Plaintiff nevertheless relies on Judge Wexler's remarks as evidence of such intent.  The State Court dismissed the Defendant's affirmative defenses and granted summary judgment against her on the claim for negligent malpractice.  The State Court did not find that she committed fraud or acted with fraudulent intent.

an attorney does not establish that she knew any representation was false or intended to deceive the Plaintiff. *See In re Steinberg*, No. 16-CV-4074-LGS, 2017 WL 1184314, at *4 (S.D.N.Y. Mar. 29, 2017) (quoting *Sarasota CCM, Inc. v. Kuncman*, 466 B.R. 590, 594 (E.D.N.Y. 2012)) (noting that "'mere negligence' and 'poor business judgment' are insufficient to satisfy '[t]he discharge exception under Section 523'"); *see also In re Glod*, 528 B.R. 517, 529 (Bankr. N.D.N.Y. 2015) (citing *In re Roggasch*, 494 B.R. 398, 407 (Bankr. E.D. Ark. 2013) ("[E]vidence of negligence or shoddy workmanship does not establish false representation with intent to deceive. The fact that a debtor's negligence caused the debt is insufficient to prove the type of fraud that is dischargeable under § 523(a)(2)(A).").

The Plaintiff's allegations that the Defendant intentionally filed defective pleadings and improper UCC liens do not, by themselves, establish fraudulent intent under § 523(a)(2)(A). Even assuming that the Defendant did intentionally file those materials, the relevant inquiry is whether she did so with the intent to deceive the Plaintiff – not merely that she intentionally performed acts that were later determined to be defective or improper. *See In re Kiernan*, 17 B.R. 362, 365 (Bankr. S.D.N.Y. 1982) (quoting *In re McGrath*, 7 B.R. 496, 498 (S.D.N.Y. 1980) ("False representations or pretenses under Code § 523(a)(2)(A) require as an essential element that 'the representations were made with the intention to deceive the plaintiff.'"). The record contains no evidence that the Defendant undertook those acts as part of a scheme to deceive the Plaintiff or to induce him to transfer money, property, services, or credit. *See In re Goldstein*, 663 B.R. 245, 253 (Bankr. S.D.N.Y. 2024) (holding that a debt is nondischargeable under § 523(a)(2)(A) if the creditor establishes that the debtor "made a false or misleading statement" with the "intent to deceive … in order for the plaintiff to turn over money or property" to the debtor).

19

The Plaintiff also fails to establish the required causal connection between the alleged fraud and the debt. The State Court Judgment compensates the Plaintiff for losses proximately caused by the Defendant's legal malpractice. (*See* Statement of Undisputed Facts, Dkt. No. 16). While the Plaintiff characterizes the debt as traceable to legal fees obtained through fraud, he identifies no evidence showing which representation induced the payment of those fees, what fees were paid in reliance on that representation, or how the amount of the State Court Judgment corresponds to money or property obtained through fraud. (*Id.*). On this record, the Court finds that the Plaintiff has not satisfied his burden to show proximate cause.

For substantially the same reasons, the Plaintiff has not established false pretenses or actual fraud. The record contains no evidence of conduct calculated to create a contrived or misleading understanding of the transaction, nor evidence of a deceitful scheme designed to cheat the Plaintiff. The Plaintiff's characterization of negligent professional conduct as fraudulent does not create a genuine dispute of material fact.

Accordingly, the Plaintiff has failed to establish nondischargeability under § 523(a)(2)(A).

## C. The Debt Is Dischargeable Under § 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "The phrase 'while acting in a fiduciary capacity' only qualifies the words 'fraud or defalcation' and not 'embezzlement' or 'larceny'; the implication is that the discharge exception applies even where the embezzlement or larceny was committed by someone not acting as a fiduciary." *In re Steinberg*, No. 14-10845-MG, 2016 WL 2637959, at *11 (Bankr. S.D.N.Y. May 5, 2016) (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.10 (15th ed. 2006)).

Whether a debtor "acted in a fiduciary capacity" within the meaning of § 523(a)(4) is a question of federal law, although "state law may influence the scope of the debtor's fiduciary obligations." *In re Placeres*, 561 B.R. 354, 362 (Bankr. S.D.N.Y. 2016). The term "fiduciary" is construed more narrowly under § 523(a)(4) than under general state-law principles. *See In re Wong*, 291 B.R. 266, 278 (Bankr. S.D.N.Y. 2003) (noting that the definition of "fiduciary" for purposes of § 523(a)(4) is "controlled by federal common law and is narrower than under general common law"); *see also In re Marklin*, No. 8-21-71030-REG, 2023 WL 6306786, at *10 (Bankr. E.D.N.Y. Sept. 27, 2023) ("Courts within the Second Circuit define fiduciary duty narrowly in the bankruptcy context: '[t]he broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under §523(a)(4).'"). In the Second Circuit, a "fiduciary" is "generally limited to instances involving express or technical trusts." *Wong*, 291 B.R. at 278. But an "attorney-client relationship may qualify as a fiduciary relationship for § 523(a)(4) purposes even in the absence of a technical or express trust." *Placeres*, 561 B.R. at 362 (citing *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 168 (2d Cir. 1999)); *see also Zois v. Cooper*, 268 B.R. 890, 895 (S.D.N.Y. 2001) ("An attorney-client relationship forms a fiduciary bond under Section 523(a)(4).").

"Defalcation," for purposes of § 523(a)(4), means "any failure, innocent or otherwise, by a fiduciary to account for, or pay over, trust funds entrusted to him or her." *In re Barrios*, No. 06-11852-BRL, 2007 WL 2406881, at *3 (Bankr. S.D.N.Y. Aug. 20, 2007) (citing *Peerless Ins. Co. v. Casey (In re Casey)*, 181 B.R. 763, 766 (S.D.N.Y. 1995)). In *Bullock*, the Supreme Court defined "defalcation" under § 523(a)(4) to include "a culpable state of mind" that involves "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013). Where "actual knowledge of wrongdoing is

lacking," the fiduciary must have "consciously disregard[ed]" or been "willfully blind to" a "substantial and unjustifiable risk" that the conduct would violate a fiduciary duty. *Id*. at 268. Thus, negligence, without the culpable state of mind defined in *Bullock*, does not constitute defalcation. *See In re Thornton*, No. 23-50216-JAM, 2024 WL 844971, at *7 (Bankr. D. Conn. Feb. 28, 2024) (applying *Bullock*'s definition of defalcation).

"Federal common law defines embezzlement as the 'fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *In re Mahn*, 673 B.R. 270, 288 (Bankr. S.D.N.Y. 2025) (quoting *In re Sesum*, 662 B.R. 840, 847 (Bankr. S.D.N.Y. 2024)). To establish embezzlement under § 523(a)(4), "a creditor must prove: (1) that the creditor has entrusted his property to the debtor; (2) that the debtor appropriated the property for a purpose other than that for which it was entrusted; and (3) the circumstances indicate that the debtor acted with fraudulent intent or deceit." *Mahn*, 673 B.R. at 288; *see also Sesum*, 662 B.R. at 847 (citing *In re Nappy*, 269 B.R. 277, 296-97 (Bankr. E.D.N.Y. 1999)).

"Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." *In re Caisse*, 568 B.R. 6, 15 (Bankr. S.D.N.Y. 2017). The principal distinction between larceny and embezzlement is that, in the case of larceny, "the original taking of the property must be unlawful." *Id*. (citing 4 COLLIER ON BANKRUPTCY ¶ 523.10 (15th ed. 2006)). In the case of embezzlement, the debtor initially acquired the property lawfully or with the consent of the owner. *See In re Ranciato*, 638 B.R. 275, 287 (Bankr. D. Conn. 2022) (citing 4 COLLIER ON BANKRUPTCY ¶ 523.10 (15th ed. 2006)).

Assuming the attorney-client relationship sufficiently establishes the Defendant's fiduciary status for purposes of § 523(a)(4), that status alone does not establish defalcation. Under New

22

York law, proof of malpractice may be sufficient to demonstrate a breach of fiduciary duty if the plaintiff shows (1) the existence of a fiduciary relationship; (2) actions constituting a breach of duties of loyalty or care; and (3) damages proximately caused by that action. *See Soley v. Wasserman*, 823 F. Supp. 2d 221, 232 (S.D.N.Y. 2011). But "none of these elements require proof of the culpable state of mind that proof of 'defalcation' requires." *In re Jacobs*, No. 22-10132-MEW, 2024 WL 3579469, at *6 (Bankr. S.D.N.Y. July 29, 2024). Courts in the Second Circuit have "therefore recognized that a judgment for breach of fiduciary duty does not automatically mean that a debt is nondischargeable" under § 523(a)(4). *Id*. (citing *Denton v. Hyman*, 502 F.3d 61, 69 (2d Cir. 2007) ("[M]isappropriation and breach of fiduciary duties apparently do not, under New York law, consistently require proof of a culpable mental state."); *see also In re Mal Funn Assoc., Inc*., 406 B.R. 622, 633 (Bankr. S.D.N.Y. 2009) ("[N]ot every breach of fiduciary duty involves a willful act, gross negligence, or fraud.").

As the Court has previously explained, the State Court found only that the Defendant failed to exercise the ordinary skill and care required of an attorney. The State Court did not find that the Defendant knowingly violated a fiduciary duty or consciously disregarded a substantial and unjustifiable risk that her conduct would violate a fiduciary duty. *See Bullock*, 569 U.S. at 268.

The Plaintiff's claims for embezzlement and larceny likewise fail on the merits. Both theories require proof concerning the Defendant's acquisition or appropriation of identifiable property, and neither is established by merely showing deficient legal services. *See Mahn*, 673 B.R. at 288; *see also Caisse*, 568 B.R. at 15. To establish embezzlement, the Plaintiff must identify property entrusted to the Defendant, an appropriation of that property for an unauthorized purpose, and fraudulent intent. *See Mahn*, 673 B.R. at 288. The Plaintiff identifies no property entrusted to the Defendant that she later misappropriated. The mere payment of legal fees does not establish

23

that the Defendant held those funds in trust or fraudulently appropriated them for an unauthorized purpose. *See Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05-CV-4837-HB, 2006 WL 399396, at *9 (S.D.N.Y. Feb. 21, 2006) (noting that "the receipt of professional fees alone is generally held insufficient to support a claim of fraud"). Nor has the Plaintiff shown that the Defendant accepted any payment with the fraudulent intent necessary to establish embezzlement. *See id*.

Larceny requires proof that the Defendant fraudulently and unlawfully took the Plaintiff's property at the outset with the intent to convert it to her own use. *See Caisse*, 568 B.R. at 15. The record contains no evidence of such a taking. The Plaintiff does not identify any property that the Defendant obtained unlawfully or without his consent. *See id*. Nor does the Plaintiff's voluntary payment of legal fees, even for services later found to be negligent, support the inference of fraudulent intent necessary to establish larceny. *See Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 639 (S.D.N.Y. 1999) (quoting *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96-CV-3231, 1998 WL 167330, at *21 (S.D.N.Y. Apr. 8, 1998) ("The receipt of professional fees does not provide an adequate 'basis for drawing the necessary strong inference of fraudulent intent.'").

On this record, the Court finds that the existence of an attorney-client relationship and a judgment for legal malpractice, without more, do not establish fraud, defalcation, embezzlement, or larceny. Accordingly, the Plaintiff has failed to establish nondischargeability under § 523(a)(4).

### D. The Debt Is Dischargeable Under § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The terms willful and malicious are separate elements, and both elements must be satisfied." *Soliman v. Vyshedsky (In re Soliman)*, 539 B.R. 692, 698 (Bankr. S.D.N.Y. 2015).

24

"To establish that a debtor acted willfully," a plaintiff must prove "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Paredes*, 2017 WL 2603687, at \*6 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). "Negligence and recklessness are insufficient" under § 523(a)(6). *Paredes*, 2017 WL 2603687, at \*6 (citing *Soliman*, 539 B.R. at 699). Rather, "the debtor must engage in conduct where he actually intends to injure the party, or engages in conduct where the consequences are 'substantially certain' to result therefrom." *Paredes*, 2017 WL 2603687, at \*6 (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965)) (holding that § 523(a)(6) "incorporates the common law meaning of willful, which is established when '[an] actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it'").

As for the malice element, "the plaintiff must prove that the debtor's act was 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Soliman*, 539 B.R. at 699 (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996)). "[I]n cases where a debtor seeks profit for some other benefit, 'the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice[.]'" *Lee*, 2024 WL 1261790, at \*11 (quoting *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)); *see also Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 145 (Bankr. S.D.N.Y. 1998)). "[M]alice is implied when 'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'" *Paredes*, 2017 WL 2603687, at \*6 (quoting *Soliman*, 539 B.R. at 699).

The Plaintiff has not established willfulness.  As explained above, the State Court Judgment rests on the Defendant's failure to exercise the ordinary skill and care required of an attorney. Courts have routinely held that a debt arising from a malpractice judgment attributable to negligent or reckless conduct does not fall within the ambit of § 523(a)(6).  *See, e.g.*, *Geiger*, 523 U.S. at 64 ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."); *In re Mason*, No. 95-41537-JLG, 1999 WL 58579, at *4 n.2 (Bankr. S.D.N.Y. Jan. 28, 1999) (noting that "§ 523(a)(6)'s exemption from discharge is confined to debts for intentional torts," and that "a debt for malpractice, which is based on negligent or reckless conduct, does not fall within the exception"); *In re Salim*, No. 13-42974-ESS, 2015 WL 1240000, at *23 (Bankr. E.D.N.Y. Mar. 16, 2015) (holding that "debts arising from negligent or reckless conduct are not within the ambit of willfulness" under § 523(a)(6)); *In re Chaffee*, No. 07-11636, 2009 WL 2872834, at *6 (Bankr. N.D.N.Y. Jan. 12, 2009) ("*Geiger* and its progeny dictate that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).") (internal quotations omitted).

The Plaintiff also fails to establish malice.  A failure to comply with professional duties, without evidence of an intent to injure or other aggravating conduct, does not establish that the Defendant acted maliciously within the meaning of § 523(a)(6).  *Lee*, 2024 WL 1261790, at *11 (holding that malice requires a showing of "additional, aggravating conduct on part of the debtor"). Although a plaintiff is not required to show "personal animus," a showing of "malice" requires evidence of egregious conduct in light of "the surrounding circumstances."  *In re Birnbaum*, 513 B.R. 788, 806 (Bankr. E.D.N.Y. 2014) (citing *Navistar*, 94 F.3d at 87).  Based on the record, the Court finds that the Plaintiff has failed to show any aggravating circumstances, conscious

26

wrongdoing, improper purpose directed at the Plaintiff, or conduct of sufficient gravity to warrant an inference of malice.

At most, the record establishes that the Defendant performed legal services negligently and that her negligence proximately caused the Plaintiff's damages.  While that is sufficient to establish legal malpractice, it is insufficient to establish willful and malicious injury.  Accordingly, the Plaintiff has failed to establish nondischargeability under § 523(a)(6).

## V.     CONCLUSION

For the foregoing reasons, the Court finds that the State Court Judgment establishes only the existence and amount of the Defendant's liability for legal malpractice, but does not establish the elements necessary to except that debt from discharge.  The Plaintiff has failed to raise a genuine issue of material fact as to fraud, defalcation, embezzlement, larceny, or willful and malicious injury under §§ 523(a)(2)(A), 523(a)(4), or 523(a)(6).  The Court therefore concludes that the Defendant is entitled to judgment as a matter of law.

Accordingly, it is hereby **ORDERED** that:

1.  The Defendant's Motion (Dkt. No. 12) is **GRANTED**.

2.  The Plaintiff's Cross-Motion (Dkt. No. 13) is **DENIED**.

**IT IS SO ORDERED**.

Dated: August 5, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

27